UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| JOANNE JESTER, | : | Bankruptcy No. 05-32185DWS |
| aka Joanne Ramage, | : | |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Motion for Contempt of Automatic Stay (the "Motion") filed by the Debtor against the Philadelphia Parking Authority ("PPA"). An evidentiary hearing at which only the Debtor testified was held on March 14, 2006 to supplement the Stipulation of Facts filed on March 13, 2006. As the pre-hearing briefs that were filed did not adequately address the legal issues identified by the Court, the parties were granted leave to supplement those as well. The briefs now having been submitted, the Motion is ripe for decision. For the reasons that follow, the Motion is granted.

**BACKGROUND**

The Debtor's husband, a former mechanic, purchased a 1991 Chrysler sedan (the "Vehicle") for her on December 17, 2003 for approximately $100. He purchased parts

and made repairs to it to put it in driveable condition, including installing a new timing belt, water pump, one tire, rebuilding the carburetor and fixing the electrical windows, at a cost for the parts of $1,000.[1] The PPA issued three tickets to Debtor on account of expired meters on February 26, 2004, April 26, 2004 and October 1, 2004. On November 12, 2004 PPA issued another ticket on account of an expired registration sticker on the Vehicle. It is undisputed that the Vehicle was not properly registered in Debtor's name with the Commonwealth of Pennsylvania, Bureau of Motor Vehicles (apparently because the registration had expired).[2]

On September 9, 2005 Debtor filed a petition for relief under Chapter 13. She scheduled the PPA as an unsecured creditor in the amount $571 for unpaid parking tickets. On September 14, 2005 the PPA immobilized (booted) the Vehicle. On that date the Vehicle had no valid registration. On September 19 and 25, Debtor went to the PPA to find out how to recover her Vehicle. She did not ask for the return of any property located in the Vehicle because she believed the Vehicle would be returned. She was given a form "Statement of Rights and Responsibilities" regarding a hearing. Exhibits D-2 and D-3. She was told that if her bankruptcy was effective, she would be given her keys. However, as she could not produce a petition with the seal of the bankruptcy court, the PPA would not release the Vehicle.[3]

---

[1] Debtor could produce no receipts of these expenditures contending that they were located in the Vehicle which was seized without the return of her property.

[2] PPA does not contend that the Vehicle is not owned by the Debtor.

[3] Her counsel claims that the reason that she could not produce the document in the form demanded was that documents are now electronically filed and are longer stamped by the Court.

On October 13, 2005 PPA filed a "Petition for Leave to Sell Motor Vehicles for Impounding Charges and Outstanding Fines and Any and All Related Costs and Best Title and Purchaser Pursuant to President Judge General Court Regulation No. 96-1" (the "Petition") in the Court of Common Pleas as of October Term, 2005, No. 0903. Exhibit D-1. The Vehicle was covered by this Petition. On October 11, 2005[4] an Order was entered by the Court of Common Pleas authorizing the sale of, inter alia, the Vehicle on October 22, 2005. Id. It was sold at an auction later that day. The record is silent as to the auction sale price for the Vehicle, and Debtor contends its trade-in value to be $1,200.

While Debtor apparently informed the PPA representatives she met of her pending bankruptcy case, it was not raised in the state seizure proceeding. On October 25, 2005 her counsel faxed a copy of a Note and the Notice of Bankruptcy Filing to PPA and followed it the next day with this Motion.

**DISCUSSION**

I.

The application of the most fundamental principle of bankruptcy law leads to the inescapable conclusion that PPA's post-petition conduct in seizing and impounding the Vehicle and selling it to recover the costs of unpaid prepetition parking fines and storage costs violated the automatic stay of § 362(a). PPA's arguments to contend that there was no stay violation are simply incredible.

---

[4] Either this date or the filing date is incorrect as an Order cannot be entered before the pleading is filed. The error is not material to the outcome of this contested matter.

First PPA's contends that it was free to collect the post-petition obligation for the storage fees, conveniently ignoring that it also sought to recover the prepetition claim for the unpaid parking tickets. The commencement of process against the debtor to recover a prepetition claim is stayed under § 362(a). The fact that the action also seeks to recover a postpetition claim does not cleanse the illegal conduct. Then PPA seeks to split hairs by stating that it was not collecting a money judgment since it held the sale proceeds and Debtor just didn't come to claim them. In support of that contention, it attaches the regulations that proscribe its procedures when a seized vehicle is sold. Aside from the fact that there was no testimony of what actually occurred in this case and that even the belatedly produced documents do not refer to Debtor, the procedure described does not support PPA's contentions. The generic notice that is supplied specifically advises that the owner will be required to pay all outstanding parking tickets issued to the vehicle as well as a towing fee and the per diem storage charge before recovery of the seized vehicle will be authorized. PPA's request to the Court which is styled "Petition for Leave to Sell Motor Vehicles For Impounding Charges <u>and Outstanding Fines</u> and Any and All Related Costs..." states that "City of Philadelphia has a <u>financial interest</u> on said vehicles for towing and storage charges <u>and related fines</u>, if any, in the amounts specifically set forth in Exhibit A, ..."[5] and "pursuant to the aforestated financial interest, the City requests the auction. Exhibit D-1 (emphasis added). Judge Massiah Jackson's Order states that the net proceeds of sale shall be distributed as provided in Section 6 of General Court Regulation No. 96-1 and

---

[5] Exhibit A was not provided but it is undisputed that debtor had three outstanding parking fines and that PPA is scheduled as a prepetition unsecured creditor with a claim for parking tickets of $671.00.

"any remaining proceeds shall be held for the owner." Id. (emphasis added). Thus, PPA's own submissions belie the statement that it was not collecting a money judgment. In any event, even if PPA did not complete the process of paying itself, the acts it took in furtherance of that end violated the stay. See Internal Revenue Service v. Norton, 717 F.2d 776, 772 (3rd Cir. 1983) (rejecting IRS contention that withholding overpaid taxes to preserve its setoff rights under the Internal Revenue Code did not violate the automatic stay.)

Moreover, even had the only claim been for post-petition impoundment and storage costs which PPA would have been free to pursue, it could not do so by seizing estate property. Section 362(a)(3) prohibits any act to obtain property of or from the estate. 11 U.S.C. § 362(a)(3). See In re Fisher, 198 B.R. 721 (Bankr. N.D. Ill. 1996) (City's action in booting, towing and crushing the debtor's vehicle for her failure to pay post-petition parking tickets violated the stay under § 362(a)(3)). PPA contends that the Vehicle was not estate property but I respectfully disagree. Its position is based on a misrepresentation of the Debtor's file. First PPA states that as Debtor exempted the Vehicle, it cannot be property of the estate, attaching Debtor's Amended Schedule C dated October 31, 2005. Doc. No. 11. PPA fails to mention that at the time all of its actions to sell the Vehicle were taken, Debtor had not yet exempted the Vehicle. The Court takes judicial notice of Debtor's original Schedule C filed September 9, 2005 which does not claim an exemption for the Vehicle. Doc. No. 1. The law is clear that when a debtor files for bankruptcy, all of the debtor's property becomes property of the estate. This necessarily includes any property which the debtor intends to exempt under § 522. Taylor v. Freeland & Kronz, 503 U.S. 638, 641

(1992). Unless the debtor takes affirmative steps to exempt the property, it remains property of the estate. Furthermore property for which an exemption is claimed remains estate property for at least thirty days of the first meeting of creditors to allow objections to the exemptions to be lodged. Fed.R.Bankr.P. 4003. Thus, even had the Debtor included the Vehicle on her original Schedule C, it still would have been property of the estate when PPA sought to sell the Vehicle since the § 341 meeting was held on October 31, 2005.

PPA also contends the Vehicle was not property of the estate because it had revested in the Debtor pursuant to §1327(b) which states that except as otherwise provided, the confirmation of a plan vests all of the property of the estate in the debtor. Seemingly to prove its point, it attaches the confirmation order dated March 16, 2006, again glossing past the temporal flaw of its argument. Property of the estate revested in the Debtor upon confirmation which occurred on March 16, 2006, five months after it was sold by PPA. Since the Vehicle had not revested in the Debtor when the seizure occurred, the seizure was an impermissible act to obtain property of the estate.

II.

PPA next contends that its actions were permissible based on two statutory exceptions to the operation of the automatic stay. First, PPA argues that § 362(b)(1) applies contending that the enforcement of parking regulations is a quasi-criminal enforcement proceeding. Second, PPA contends that its conduct was insulated by § 362(b)(4) since the enforcement of parking regulations is an exercise of the PPA's police powers. I find no merit to the first argument and while I agree that § 362(b)(4) allows PPA to take certain actions in furtherance of its police powers, it does not allow it to sell estate property to pay a prepetition debt.

A. Section 362(b)(1) Exception

Section 362(b)(1) provides an exception to § 362(a) for the commencement or continuation of a criminal action or proceeding. On it face § 362(b)(1) appears to have nothing to do with the enforcement of parking regulations contained in the City Traffic Code. By counsel's own admission, this is not a criminal law.[6] Rather PPA relies on In re Cuevas, 205 B.R. 457 (Bankr. D. N.J. 1997), to contend that "[t]he Courts in this Circuit have held that the enforcement of traffic offenses and fines is a quasi-criminal activity that falls under this exception of criminal activities." Philadelphia Parking Authority Brief in Support of Objection to Motion at 3. While Cuevas did rely on this exception, it did so under facts so disparate from those at issue here that it is surprising that PPA offers it.

In Cuevas, the debtor was convicted pre-petition of driving without insurance, for improper tag display and for driving with a revoked license. His license was suspended and he was fined. When he failed to remit the fines, the municipal court issued a warrant and placed him in jail. The statute under which he was incarcerated mandates the imprisonment of a person convicted of a motor vehicle violation if the person defaults in the payment of any of the fines imposed. That statute was described by the New Jersey Supreme Court as imposing a fine to punish, and that imprisonment upon non-payment, was not a collection device but rather further punishment. Accepting the state court's characterization, the

---

[6] Indeed Chapter 12-2800 of the Traffic Code provided by PPA's counsel recites that the then existing system of parking violation within the criminal justice system was an inefficient and unfair system for the collection of parking fines, and that the City of Philadelphia is therefore authorized to provide for parking violation enforcement outside of the criminal justice system. §12-2801 (Legislative Findings).

bankruptcy court held that the incarceration was the continuation of a criminal proceeding substituting incarceration as the penalty for the earlier convictions.

Unlike the criminal proceeding in Cuevas, the action taken by PPA was civil in nature. The Traffic Code allows the PPA to tow, boot and impound vehicles that are unregistered as was the Vehicle. Philadelphia Code and Charter § 12-1130. The Petition PPA filed with the state court for leave to sell the Vehicle at auction recites that the City has a "financial interest" for towing and storage charges and parking tickets and related fines. Pursuant to that "financial interest," the City requested leave to auction the Vehicle for payment of the charges, fines and costs of the auction. That PPA was acting to collect a debt could not be plainer. Cuevas is simply inapposite and notwithstanding the further briefing opportunity, no other authority is provided for the broadly stated proposition, which I reject, that PPA's enforcement of parking fines under applicable state law is a quasi-criminal proceeding to which the exception of § 362(b)(1) is applicable.

### B. Section 362(b)(4) Exception

Section (b)(4) provides an exception under subsection (a)(1), (2),(3) and (6) for "the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's police and regulatory powers, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such unit's ... police or regulatory power." 11 U.S.C. 362(b)(4). I accept PPA's general position that the seizure, booting and impoundment of vehicles under authority of § 12-1130 is the commencement of an action by a governmental unit to enforce its police powers. The question is whether PPA's police or regulatory powers

-8-

extend to its further action, i.e., selling the Vehicle to collect its costs of the storage and unpaid parking fines, or is more properly viewed as the enforcement of a money judgment.

The parties cite me to the controlling authority in this Circuit, Penn Terra Limited v. Department of Environmental Resources, 733 F.2d 267 (3d Cir. 1984).[7] In Penn Terra, the Third Circuit held that the Pennsylvania Department of Environmental Resources' enforcement of a judgment to compel a strip mining company to backfill land was governed by the § 362(b)(4) exception to the automatic stay. Discussing the parameters of the limitation for enforcement of money judgments, the Court reasoned that if all orders requiring the expenditure of money were "money judgments," the exception for police action which should be construed broadly would be "narrowed into virtual nonexistence." Id. at 359. In noting that the injunction sought by the state did not present the characteristics traditionally associated with a money judgment, the Court provided guidance to lower courts by indicating what these characteristics are.

> We believe that the inquiry is more properly focused on the nature of the injuries which the challenged remedy is intended to redress--including whether plaintiff seeks compensation for past damages or prevention of future harm--in order to reach the ultimate conclusion as to whether these injuries are traditionally rectified by a money judgment and its enforcement. Here, the Commonwealth Court injunction was, neither in form nor substance, the type of remedy traditionally associated with the conventional money judgment. It was not intended to provide compensation for past injuries. It was not reduceable to a sum certain. No monies were sought by the Commonwealth as a creditor or obligee. The Commonwealth was not seeking a traditional form of damages in tort or contract, and the mere payment of money, without more, even if it could be estimated, could not satisfy the Commonwealth

---

[7] The Debtor cites a number of other cases, noting that Penn Terra has not been universally followed. Debtor's Brief on Motion at 3. While that may be true, Penn Terra is binding precedent on lower courts in this Circuit and I will follow its dictates. Fortunately for Debtor, I do not read the case as generously as does PPA.

-9-

> Court's direction to complete the backfilling, to update erosion plans, to seal mine openings, to spread topsoil, and to implement plans for erosion and sedimentation control. Rather, the Commonwealth Court's injunction was meant to prevent future harm to, and to restore, the environment.

Id. at 278. On the contrary here, PPA is seeking compensation for past damages (i.e., the unpaid parking tickets and impoundment costs), an amount that was reduced to a sum certain in the Petition. Its actions were that of a creditor and in liquidating estate property for its benefit, PPA secured a preference over other similarly situated creditors with a claim against the estate. Equal treatment of creditors is one of the fundamental legislative objectives of the Bankruptcy Code and is implemented by the automatic stay which protects creditors by preventing a race to seize the debtor;s assets. H.R. Rep.No, 595, 95th Cong., 1st Sess. 174-75 (1977), S.Rep. 989, 95th Cong., 2d Sess. 49-50 (1978). The sale of the Vehicle did not enhance PPA's regulatory purpose but rather, as its own Petition made clear, merely served its pecuniary interest.

In short, I find that PPA's conduct was not governed by either stay exception relied upon. I am also unpersuaded by certain other justifications for the stay violation which are advanced by PPA. PPA's argument that it followed the state proscribed regulations for a sale of seized vehicles, providing appropriate notices and hearings, misses the point. A sale conducted in accordance with state law is not *a fortiori* in compliance with bankruptcy law. Nor does the fact that the Debtor failed to defend the Petition by pleading the pendency of the bankruptcy limit the Debtor's position under principles of *res judicata*. As I stated to PPA's counsel at the hearing, if its actions were in violation of the stay, they were void *ab initio*. Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir.

-10-

1992). Debtor's active participation in the void state court proceedings and silence about her bankruptcy case cannot validate a void action. In re Izzi, 196 B.R. 727, 729 (Bankr. E.D. Pa. 1996).[8]

This is not to state that PPA was without recourse. If contrary to her testimony, Debtor had refused to reclaim the Vehicle, PPA was not compelled to store it indefinitely, thereby incurring additional costs. A simple motion for relief from stay on notice to Debtor would have provided an appropriate resolution. Had Debtor failed to appear as PPA claimed was the case with its state court process, it would have received relief from stay to dispose of the Vehicle and turn over the proceeds to the Chapter 13 trustee so long as it was property of the estate or to pay its post-petition claim if it was not.

## C. Damages

Section 362(k) of the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section [i.e., section 362] shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). Accordingly, PPA will be liable for damages if I find its actions in violation of the stay to be willful. Willfulness in the context of a stay violation has been interpreted by the Third Circuit Court of Appeals to mean "an intentional or deliberate act done with knowledge that the act is in violation of the stay." Cuffee v. Atlantic Business and Community Development Corp. (In re Atlantic Business and Community Development Corp.), 901 F.2d 325, 329 (3d Cir. 1990).

---

[8] Debtor's failure to raise the pendency of the bankruptcy in response to the Petition might have mitigated a finding of willfulness had PPA not been advised by Debtor on at least two occasions of her bankruptcy filing and gone ahead anyway with the sale of the Vehicle.

> A 'willful violation does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

Id. *(quoting* In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989)). The uncontroverted evidence is that PPA knew of the Debtor's pending bankruptcy case as she made multiple contacts to recover the Vehicle before it was sold. PPA knew it was required to return the Vehicle in the event of bankruptcy but its representatives were not convinced that a bankruptcy case was initiated because Debtor did not produce a time stamped petition. However, her advice to PPA was sufficient, and put PPA on notice that its acted at its own peril in violating the stay.[9] In knowing about the stay and ignoring it, PPA acted willfully so as to require it to compensate the Debtor for her actual damages and attorneys' fees.[10]

The damage claimed by Debtor is loss of her Vehicle measured by its fair market value. Courts do not hesitate to compensate a debtor for the value of property seized in violation of the automatic stay. See Johnson v. Imported Cars of Maryland, Inc. (In re Johnson), 230 B.R. 466 (Bankr. D. D.C. 1999) (appropriate measure of damages was the amount the trustee could have secured for sale of car had it not ben seized in violation of the stay).

---

[9] The notion that Debtor was required to produce a petition with the court's seal before PPA would be obligated to cease its actions is misguided. The Debtor's mere advice to PPA is constructive notice of the bankruptcy without the requirement of any proof, Patterson v. Chrysler Financial Co.(In re Patterson), 263 B.R. 83, 91 (Bankr. E.D. Pa. 2001), not that verification is at all difficult for the creditor since the court's entire docket is available through the PACER system at www.paeb.uscourts.gov.

[10] While punitive damages are available under this section in appropriate cases, Debtor does not seek them nor do I find them warranted.

-12-

Debtor provided the only valuation evidence, testifying that the Vehicle cost $100 and $1,000 was spent on parts to repair and make it functional. The repairs were performed by her husband, a former mechanic. She opined that the trade-in value was $1,200 and seeks a judgment in that amount. PPA put on no evidence of value and was unable to elicit from the Debtor the amount it had received when it sold the Vehicle at auction.

It is generally accepted that an owner, because of her personal interest in the property, the uses to which it is put, the condition or the improvements made to it, is competent to provide valuation testimony. In re Blakey, 76 B.R. 465, 469 (Bankr. E.D. Pa. 1987) (*quoting* Kinter v. United States, 156 F.2d 5, 7 (3d Cir. 1946). Federal Rule of Evidence 701, which supports the admission of this testimony, does not address its weight which, as with any evidence, must be determined by the trier of fact. PPA is correct that the $1,200 number stated a conclusion without any reason. I would have thought that the value of the Vehicle would have been greater than its purchase price of $100 given the repairs that had been made by the time it was seized. Parts costing $1,000 and unpaid labor arguably accomplished an improvement in the Vehicle's condition and utility, not mere maintenance as PPA contends. Sensing that the $1,200 may have been inflated for a 1991 automobile purchased for $100, I turned to the Debtor's Schedules and found that on October 31, 2005 when she filed her Amended Schedule C to claim the Vehicle as exempt, she stated its value as $100. This court may take judicial notice of the Debtor's Schedules filed under penalty of perjury. In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (citing Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party

-13-

that made them. <u>Larson v. Gross Bank</u>, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). <u>See</u> also <u>In re Musgrove</u>, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); <u>In re Leonard</u>, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same). As Debtor fixed the value of the vehicle at $100 for the purposes of her exemption, I find she is bound to it now that she seeks a cash equivalence for its disposition. However, since PPA admits that it received $125 upon auction of the Vehicle, she will be awarded the greater amount.[11]

Because the violation is willful, Debtor is also entitled to her attorneys' fees. However, as I have no evidence of what they are, I cannot liquidate that portion of the judgment. Rather I will give the parties time to negotiate an appropriate fee. If no agreement is reached, Debtor's counsel shall file an application detailing his services as to which PPA may respond, and I will supplement this Order as needed.

An Order consistent with this Memorandum Opinion shall issue.

                              DIANE WEISS SIGMUND
                              Chief U.S. Bankruptcy Judge

Dated: April 12, 2006

---

[11] PPA's misstates the record in its Supplemental Brief when it states that "the only definite facts that have been established is that she bought the car for $100 and it was sold at auction for $125." Even if I could understand the unauthenticated document purporting to evidence the auction price of the Vehicle in the documents attached to PPA's Supplemental Brief, it certainly is not admissible by an attachment to a brief and after the record is closed. <u>In re MacDonald</u>, 222 B.R. 69, 72 (Bankr. E.D. Pa. 1998) loan documents attached to brief as exhibits and not offered into evidence cannot be considered); <u>In the Matter of Holly's, Inc.</u>, 190 B.R. 297, 301 (Bankr. W.D. Mich. 1995) documents attached to brief not admitted into evidence will not be considered). Nonetheless, since the $125 amount is greater than the value claimed by Debtor in her Amended Schedule C, I will treat it as an admission by PPA which will allow her damages to be slightly increased.

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| JOANNE JESTER, | : | Bankruptcy No. 05-32185DWS |
| aka Joanne Ramage, | : | |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 12th day of April 2006, upon consideration of the Motion for Contempt of Automatic Stay (the "Motion") filed by the Debtor against the Philadelphia Parking Authority ("PPA"), after notice and an evidentiary hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **GRANTED**. The Debtor is awarded $125 for the loss of her Vehicle and attorney's fees in an amount to be determined.

DIANE WEISS SIGMUND<br>
Chief U.S. Bankruptcy Judge

<u>Copies to</u>:

James D. Moran, Esquire
100 South Broad Street
#1430
Philadelphia, PA 19110

Ronald L. Daugherty, Esquire
Pelino & Lentz
1650 Market Street
32nd Floor
Philadelphia, PA 19106-7393

William C. Miller, Esquire
Standing Chapter 13 Trustee
P. O. Box 40119
Philadelphia, PA 19106-0119

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107